IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE ALLEN HUBBARD,

Petitioner,

vs.

FRANK X. CHAVEZ,[1] Warden (A), Sierra Conservation Center,

Respondent.

No. 2:09-cv-01844-JWS

MEMORANDUM DECISION

Petitioner Dwayne Allen Hubbard, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Hubbard is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Sierra Conservation Center. Respondent has answered the petition. Hubbard has not replied.

## I. PRIOR PROCEEDINGS/BACKGROUND

Following a jury trial, Hubbard was convicted in the Sacramento County Superior Court of one count of assault with intent to commit sexual penetration by a foreign or unknown object (Cal. Penal Code, §§ 220, 289(a)(1)), and one count of attempted kidnapping (Cal. Penal Code §§ 664/207(a).) In a bifurcated trial, the trial court found true an allegation that defendant had a prior conviction within the meaning of Cal. Penal Code §§ 1170.12 and 667(a) for a lewd act upon a child. The trial court sentenced Hubbard to a prison term of 13 years. Hubbard timely appealed to the California Court of Appeal, which affirmed his conviction and sentence in an unpublished, reasoned decision.[2] The California Supreme Court summarily denied review

[1] Frank X. Chavez, Warden (A), Sierra Conservation Center, is substituted for the People of the State of California. Fed. R. Civ. P. 25(d).

[2] *People v. Hubbard*, 2008 WL 2058682 (Cal. App. May 15, 2008).

without opinion or citation to authority on August 13, 2008. Hubbard timely filed his petition for relief in this court on July 6, 2009.

The facts underlying Hubbard's conviction, as recited by the California Court of Appeal, are:

> After playing in a tennis match at Luther Burbank High School, the victim, 16 year-old L.R., walked to the light rail station to take the light rail train home. The victim was standing up in the train when [Hubbard] approached her and asked her name. She did not respond, and moved to sit down. She got off the train at the Meadowview station and began walking home. Several other people, including [Hubbard], also got off the train at Meadowview.
>
> [Hubbard] approached the victim and asked her to read a text message on his cell phone. The victim told [Hubbard] she could not read, and walked away. At some point, the victim became aware [Hubbard] was following her. [Hubbard] came up behind her, pulled her hair, and hit her in the eye. She tried to run away, but he pulled her toward some bushes. She resisted and pushed him away, then ran into the street.
>
> When the victim tried to run away, [Hubbard] told her, "don't run from me, you're going to be my girl." He told her, "you're going to be mine." The victim was scared. She thought he was going to rape her, or do "anything he wanted." [Hubbard] ran after her, grabbed the front of her shirt, and ripped it open from the collar down to the belly button. The victim tried to cover herself with her hands and arms, and kept backing toward the middle of the street. [Hubbard] kept grabbing and trying to move her hands out of the way so he could see her exposed torso.
>
> At the end of the struggle, a police car came. [Hubbard] walked away, and the victim was in the middle of the street, crying. The victim got into the police car and told the officer what had happened.
>
> Officer Joseph Ellis was patrolling the area in a marked patrol car. He saw a male and female in the street, who appeared to be arguing. He yelled at them to get out of the road. The female turned toward him and yelled, "help," then ran toward the patrol car. Her shirt was ripped, and she appeared upset and panicked. She told Ellis, "that guy tried to rape me or something." The male started to walk away. Ellis twice told him to stop, but he kept walking. Ellis reported the incident on the radio and kept an eye on [Hubbard]. Another unit arrived and detained [Hubbard] down the street. In addition to the victim's ripped shirt, Ellis noticed her left eye was beginning to swell.
>
> Ellis arrested [Hubbard]. A search of [Hubbard's] person revealed four condoms in [Hubbard's] pocket.[3]

---

[3] *Id.* at *1–2.

## II. GROUNDS RAISED/DEFENSES

In his petition, Hubbard raises three grounds for relief: (1) the trial court erred because it failed to suspend the trial and hold a competency hearing; (2) in allowing the prosecution to file an amended information, the trial court denied him due process; and (3) his assault conviction was not supported by sufficient evidence. Respondent asserts no affirmative defense.[4]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70–75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

---

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678–79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

In applying this standard, this Court reviews the last reasoned decision by the state court.[14] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15] This presumption applies to state trial courts and appellate courts alike.[16]

## IV. DISCUSSION

Ground 1: Mental Competency Hearing.

Prior to the commencement of trial, Hubbard's counsel raised the question of Hubbard's competency to stand trial. The trial court, after hearing counsel's offer of proof, declined to suspend the trial to examine Hubbard's competency. Hubbard contends that he was entitled to a hearing under Cal. Penal Code § 1368(b) and that the failure to hold one also violated his federal due process rights. In rejecting Hubbard's argument, the California Court of Appeal held:

> [Hubbard] argues the trial court erred by failing to suspend the trial and hold a hearing to determine competence after his defense counsel declared a doubt regarding his competence to stand trial. [Hubbard] claims the trial court was required to hold a competency proceeding because he presented the court with evidence that raised a reasonable doubt as to his competence. We shall conclude the trial court did not err because no evidence was presented that raised a reasonable doubt.
>
> At the time of the crime, [Hubbard] was living in a transitional group home through the Alta California Regional Program. Six months before [Hubbard's] trial began in August 2006, Alta California Regional Center had Jeffrey Miller, Ph.D. perform a psychological evaluation of [Hubbard]. Dr. Miller's evaluation concluded that [Hubbard] was at the low-average range of intelligence and had an attention-deficit/hyperactivity disorder, but that he understood the charges against him, would be able to assist his attorney at trial, and was therefore competent to stand trial. This report was given by [Hubbard's]

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

trial attorney to the prosecutor before trial in an attempt to "obtain a better offer in the case."

After the jury had been selected and the prosecutor had given her opening statement, defense counsel informed the trial court that he had a doubt with respect to the competency of his client. This doubt was based upon a telephone message counsel received from [Hubbard's] Alta Regional Center case worker. The message indicated the regional center had another psychologist look at [Hubbard's] file, and the psychologist came up with a number of potential diagnoses, at least one of which might have an effect on [Hubbard's] ability to understand issues related to his defense. The trial court granted a short continuance for both parties, as well as the court, to research the issue.

After a brief recess, defense counsel informed the court that the new psychologist believed there might be a "suggestion of Asperger's Disorder, and they're recommending some further testing." Defense counsel also spoke with someone "involved with the forensic end of the regional center" who said the new information raised a "possible doubt," but apparently did not assert the information would raise a reasonable doubt as to [Hubbard's] competency. The new information was not based upon personal evaluation of [Hubbard], but on a review of his charts. Defense counsel acknowledged that his contact at the regional center was not in a position to render any opinion on [Hubbard's] legal competence. The trial court said, "[s]o she's just saying there was some possibility that if we look at other things, potentially there could be a change in status. . . ." Defense counsel replied, "[y]es."

The trial court ruled that the new evidence was purely speculative, and that there was insufficient evidence to raise a reasonable doubt as to [Hubbard's] competence to stand trial. The day after the court's ruling, defense counsel requested a continuance to investigate whether [Hubbard] was competent to stand trial. After confirming defense counsel had no new information, the trial court denied the motion to continue, but told defense counsel he could raise the issue again should further information develop.

When the evidence casting doubt on a defendant's present sanity is less than substantial, it is within the trial court's discretion to order a sanity hearing, which discretion will not be disturbed on appeal absent abuse. (*People v. Pennington* (1967) 66 Cal.2d 508, 518-519.) However, if the defendant comes forward with substantial evidence of present mental incompetence, he is entitled to a sanity hearing as a matter of right pursuant to section 1368.[FN2] (*Ibid.*)

FN2. Section 1368 states in pertinent part:

"(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . .

> (b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. . . .
> (c) Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.
> If a jury has been impaneled and sworn to try the defendant, the jury shall be discharged only if it appears to the court that undue hardship to the jurors would result if the jury is retained on call.
> If the defendant is declared mentally incompetent, the jury shall be discharged."

---

Substantial evidence means evidence that raises a reasonable doubt as to a defendant's competence to stand trial. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1110.) "A defendant is mentally incompetent 'if, *as a result of mental disorder or developmental disability,* the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' [Citations.]" (*Ibid.*)

A psychiatrist's opinion will constitute substantial evidence to stand trial if he, "'"has had sufficient opportunity to examine the accused [and] states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel . . . ."' [Citations.]" (*People v. Rodrigues, supra,* 8 Cal.4th at pp. 1110-1111.) However, the Supreme Court has held that a psychiatrist's opinion does not rise to the level of substantial evidence where he or she does not personally examine the defendant or where the psychiatrist's opinion is inconclusive. (*Id.* at p. 1111.)

In this case the only psychiatrist to examine [Hubbard] determined him to be competent to stand trial. No psychiatrist "'"state[d] under oath with particularity"'" that [Hubbard] was incompetent. (See *People v. Rodrigues, supra,* 8 Cal.4th at pp. 1110-1111.) Moreover the later review of [Hubbard's] record was not conclusive as to his competence, but only indicated there was some possibility that upon further examination [Hubbard] might be found to be incompetent. This does not rise to the level of substantial evidence, and the trial court did not abuse its discretion in failing to suspend the trial to conduct competency proceedings.[17]

---

[17] *Hubbard*, 2007 WL 2058682 at *2–4.

To the extent Hubbard argues that the California Court of Appeal misapplied Cal. Penal Code § 1368(b), his argument is beyond the purview of this court. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[18] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[19] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[20] This is especially true where, as in this case, the highest court in the state has denied review of the intermediate appellate court's decision.[21]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[22] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to

---

[18] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[19] *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[20] *See Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[21] *Id.*; *see West*, 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[22] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

make the resulting conviction a denial of due process.'"[23] "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[24] Thus, this court will address solely Hubbard's contentions to the extent that they implicate the Due Process Clause of the United States Constitution.

Competence to stand trial requires that a defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."[25] A defendant's federal constitutional right to due process is violated if his or her competency to stand trial was at issue and he or she did not receive an adequate competency hearing.[26] The Supreme Court has held that a trial judge must conduct a competency hearing whenever the evidence before the trial judge raises a "bona fide doubt" about the defendant's competence to stand trial.[27] "A bona fide doubt exists if there is substantial evidence of incompetence."[28] In reviewing the state trial court's decision on whether to hold a competency hearing, this court examines only the information that was before the trial court.[29] Under California law, a defendant is presumed to be "mentally competent unless it is proved by a preponderance of the evidence that the defendant

---

[23] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[24] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[25] *See Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

[26] *Pate v. Robinson*, 383 U.S. 375, 385 (1986).

[27] *See id.*; *see also de Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (en banc) (same).

[28] *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir. 1997) (internal quotation marks and citations omitted).

[29] *Id.*

is mentally incompetent."[30] The Supreme Court has upheld the constitutionality of this provision.[31]

In this case, the evidence of Hubbard's incompetence is, as both the trial court and California Court of Appeal correctly found, speculative—not substantial. Thus, this court must defer to the finding that the evidence did not require a competency hearing under *Pate*.[32] On the record before it, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33] Nor can this court find that the state court unreasonably applied the correct legal principle to the facts of Hubbard's case within the scope of *Andrade-Williams-Schriro*. Hubbard is not entitled to relief on his first ground.

<u>Ground 2: Amendment of Information</u>.

After the jury had been impaneled, but before opening statements were made, the prosecutor moved to amend the information to specify that count 1 alleged a violation of section 220, assault, but that instead of the assault being with the intent to commit rape, the assault was with intent to commit sexual penetration by a foreign or unknown object. The trial court allowed the amendment. Hubbard did not request a continuance. Hubbard argues that the amendment

---

[30] Cal. Pen. Code § 1369(f).

[31] *Medina v. California*, 505 U.S. 437, 452 (1992).

[32] *Davis v. Woodford*, 384 F.3d 628, 644–645 (9th Cir. 2004).

[33] 28 U.S.C. § 2254(d).

prejudiced the defense by presenting a new theory of intent. The California Court of Appeal, in rejecting Hubbard's arguments, held:

> The original information charged [Hubbard] in count 1 with violating section 220,[FN3] in that he assaulted the victim with the intent to commit rape in violation of section 261, subdivision (a)(2). Rape is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . [¶] (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)
>
> FN3. Section 220 states in pertinent part: "any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for two, four, or six years."
>
> The prosecutor made a pretrial motion to admit evidence of [Hubbard's] prior conviction for a sexual offense against Angelique. As indicated previously, the evidence was that [Hubbard] digitally penetrated Angelique. The prosecutor argued the evidence was relevant to show [Hubbard] had a sexual intent when he assaulted the victim. Defense counsel admitted this would be the most likely issue in the case.
>
> After the jury was impaneled, but before opening statements, the prosecutor made a motion to amend the information to specify that count 1 alleged a violation of section 220, assault, but that instead of the assault being with the intent to commit rape, the assault was with intent to commit sexual penetration by a foreign or unknown object. (§ 289, subd. (a)(1).) A "foreign object" does not include a sexual organ. An "unknown object" may include a penis when it is not known what object or body part accomplished the penetration. (§ 289, subd. (k)(2-3).)
>
> [Hubbard] argues the trial court erred in granting the motion. He argues the amendment prejudiced the defense by presenting a new theory of intent. We disagree. During arguments on the motion to amend, the trial court asked defense counsel to articulate how the defense would be prejudiced by the amendment. Defense counsel argued that it changed the defense because he walked into court believing he would be defending against an intent to commit rape. The court replied that its impression was that the amendment did "not change the substantive charge." The prosecutor pointed out that even though the jury had been read the charge, the term "rape" had not yet been defined for them.
>
> In ruling in favor of allowing the amendment, the trial court stated that permitting the amendment would not result in substantial prejudice to [Hubbard's] rights because the amendment did not change any defense theory in the case, and did not alter the evidence that would be presented by either side.

The court may in its discretion allow an amendment to the information at any time during the trial, provided the defendant's substantial rights are not prejudiced. (*People v. Hernandez* (1961) 197 Cal.App.2d 25, 31.) "The test for determining whether the trial court abused its discretion in permitting the amendment of the information is whether the amendment prejudiced the substantial rights of the defendant, and attempted to change the offense to one not shown by the evidence taken at the preliminary examination." (*People v. Brown* (1973) 35 Cal.App.3d 317, 322.)

As the trial court noted, the amendment in this case did not change the substantive charge. "Any way you cut it and dice it, it's still [a violation of Penal Code] 220." [Hubbard] argues he was prejudiced because he was misled in making his defense, and because the amendment took him by surprise by relying on new facts to which he might have presented a defense. We find no substance to these arguments. First, [Hubbard] has not clearly articulated how he was misled in making his defense. To the contrary, his attorney admitted prior to the motion to amend that the issue at trial was likely to be whether he had any sexual intent. In fact, this is exactly the defense he presented. The mere fact that the amendment allowed the prosecutor to argue a broader specific intent on the part of [Hubbard] (i.e., the intent either to penetrate the victim with a penis or some other object), did not mean [Hubbard] was misled to his prejudice. The amendment did not entail the admission of any additional evidence, and the evidence presented at the preliminary hearing was sufficient to have resulted in the amended charge, because the amended charge included the attempt to rape.

Neither do we find any prejudice because of surprise. The amendment did not rely on any new facts to which [Hubbard] might have presented a defense. [Hubbard] asserts now that he had no time to prepare a defense to the amended charge, but he never asked the trial court for time to prepare a defense to the charge. [Hubbard] asserts his counsel asked for additional time, but this is not so. Defense counsel asked for time to prepare an argument against the amendment itself. The court responded that he wanted to give the jury preliminary instructions, but that defense counsel could wait to make his opening statement, and the court would wait to hear argument on the motion to amend until the next morning.

After the court gave preliminary instructions and the prosecutor gave her opening statement, the trial court told the parties to meet the next morning to argue the motion to amend the information. Defense counsel stated he wanted to submit the motion on the argument already made because he did not anticipate having a better argument the next day. The trial court then granted the motion to amend, and defense counsel asked for no continuance in light of the amended complaint.

No prejudice to [Hubbard] resulted from the amendment because the change did not result in a substantive change in the charge against him, no new facts or evidence were introduced because of the amendment, and the defense to

> the charge was not affected by the amendment. Therefore, the trial court acted within its discretion when it granted the motion to amend.
>
> For the same reasons previously articulated, we reject [Hubbard's] claim that the amendment deprived him of fair notice and due process as guaranteed under the Sixth and Fourteenth Amendments. There is no denial of due process if the amendment does not change the nature of the offense charged or prejudice defendant's rights. (*People v. Garringer* (1975) 48 Cal.App.3d 827, 833.) The purposes of the Sixth Amendment's right to be informed of the nature of the charges are to apprise the defendant of what he must defend against and to protect the defendant against double jeopardy. (*Gray v. Raines* (9th Cir. 1981) 662 F.2d 569, 572.) No double jeopardy issue is present here. [Hubbard] was adequately apprised of the charges when he was given notice of all the evidence to be presented against him well before the trial, and the amendment to the information did not change the evidence to be presented. Moreover, as previously stated, the amendment did not change the charge against him. The Penal Code section he was originally alleged to have violated (assault with intent to commit mayhem, rape, sodomy, oral copulation, or other specified offenses) stayed the same. The only difference the amendment made was to allow the prosecution to argue [Hubbard's] specific intent was to sexually penetrate the victim with his penis or some other object.[34]

Notice of the specific charge and a chance to be heard in a trial of the issues raised on that charge are among the constitutional rights of every accused in a criminal proceeding.[35] The principal purpose of the Sixth Amendment guarantee that a criminal defendant be informed of the nature and cause of the accusation against him is "to provide him with a description of the charges in sufficient detail to enable him to prepare his defense."[36] Hubbard argues before this court, as he did before the California Court of Appeal, that the timing of the amendment was such that he was left with no time to prepare a defense to the amended charge. Hubbard has not,

---

[34] *Hubbard*, 2008 WL 2058682 at *4–6.

[35] *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

[36] *Gautt v. Lewis*, 489 F.3d 993, 1003 (9th Cir. 2007) (internal quotation marks and citations omitted).

however, specified what defense he might have asserted or what additional evidence he might have introduced. Having failed to show prejudice, Hubbard is not entitled to relief.[37]

On the record before it, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[38] Nor can this court find that the state court unreasonably applied the correct legal principle to the facts of Hubbard's case within the scope of *Andrade-Williams-Schriro*. Hubbard is not entitled to relief on his second ground.

Ground 3: Sufficiency of the Evidence.

Hubbard argues that the evidence is insufficient to establish that he had the intent to commit sexual penetration by a foreign or unknown object. The California Court of Appeal, in rejecting Hubbard's position, held:

> [Hubbard] argues there was insufficient evidence to establish that he had the intent to commit sexual penetration by a foreign or unknown object. In reviewing such a claim we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence, that is, evidence that is reasonable, credible, and of solid value, to determine whether a reasonable trier of fact could have found [Hubbard] guilty beyond a reasonable doubt. (*People v. Kelly* (2007) 42 Cal.4th 763, 787-788.)
>
> The intent the prosecution was required to prove was the intent to use whatever force required to complete the sexual act against the will of the victim. (*People v. Roth* (1964) 228 Cal.App.2d 522, 532.) Here, the sexual act alleged was penetration by a foreign or unknown object. In assessing [Hubbard's] state of mind, the jury may draw inferences from his conduct, including any words he

[37] *See Jones v. Smith*, 231 F.3d 1227, 1238–39 (9th Cir. 2000) (noting the similarities between California law and Fed. R. Crim. P. 7(e), allowing amendment of a criminal information at any time before the verdict or finding so long as it does not prejudice a substantial right of the defendant).

[38] 28 U.S.C. § 2254(d).

> has spoken, as well as the circumstances surrounding the commission of the act. (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1154, overruled on other grounds in *People v. Rayford* (1994) 9 Cal.4th 1, 21.)
>
> Here, [Hubbard] showed an intent to overcome the victim's resistance by force when he pulled her hair and punched her in the eye. His intent to complete the sexual act was shown by his attempt to drag her into some bushes where they would be hidden, and by his ripping her blouse down the front and trying to move her arms so he could see her chest. His sexual intent was further shown by his comments to the victim to the effect that she would be his and he wanted her to be his girlfriend. His intent was further shown by the fact that he was carrying condoms in his pocket. The fact that any of this evidence might also be susceptible to other inferences is immaterial to our review. On appeal we must accept the logical inferences that the jury drew from the evidence. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)
>
> Additionally, evidence of [Hubbard's] prior sexual offense is circumstantial evidence of his intent here. (*People v. James* (2000) 81 Cal.App.4th 1343, 1358, fn. 9.) Combined with the other evidence of [Hubbard's] intent, the evidence was sufficient for a reasonable jury to conclude [Hubbard] had the requisite intent when he assaulted the victim.[39]

As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[40] This court must, therefore, determine whether the decision of the California court unreasonably applied *Jackson*. In making the determination, this court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, drawn inference from the evidence, or considered the evidence at trial.[41] Rather, when "faced with a historical fact that supports conflicting inferences," this court "must

---

[39] *Hubbard*, 2008 WL 2058682 at *6–7.

[40] *Jackson v. Washington*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[41] *Jackson*, 443 U.S. at 318–19.

presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[42]

Hubbard misperceives the role of a federal court in a habeas proceeding challenging a state court conviction. This court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[43] Hubbard bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous;[44] a burden Hubbard has failed to carry.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[45] Consequently, although the sufficiency of the evidence review by this court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[46] This court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[47] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[48] A determination of state law by a

---

[42] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673–74.

[43] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[44] 28 U.S.C. § 2254(e)(1).

[45] *See Engle*, 456 U.S. at 128.

[46] *Jackson*, 443 U.S. at 324 n. 16.

[47] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[48] *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its

state intermediate appellate court is also binding in a federal habeas action.[49] This is especially true where, as in this case, the highest court in the state has denied review of the intermediate appellate court's decision.[50] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[51] "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[52] It is through this lens that this court must view an insufficiency of the evidence claim.

In this case, the California Court of Appeal, applying the California "substantial" test for sufficiency of the evidence, which appears to be more stringent than the *Jackson* constitutional standard, found there was sufficient evidence to support Hubbard's conviction under state law as construed by the Court of Appeal. The California Supreme Court declined to review that decision. As noted above, this court must assume that the California Court of Appeal properly applied state law, particularly in light of the denial of review by the California Supreme Court. Consequently, this court cannot say that the decision of the California Court of Appeal was

---

pronouncement is to be accepted by federal courts as defining state law. . . .").

[49] *See Hicks v. Feiock*, 485 U.S. 624, 629–30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[50] *Id.*; *see West*, 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[51] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[52] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[53] Nor can this Court find that the state court unreasonably applied *Jackson* to the facts of Hubbard's case within the scope of *Andrade-Williams-Schriro*. Hubbard is not entitled to relief on his third ground.

## V. CONCLUSION AND ORDER

Hubbard is not entitled to relief on any grounds raised in the petition. Accordingly,

**IT IS ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that the court declines to issue a Certificate of Appealability.[54] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[55]

The Clerk of the Court will please enter final judgment accordingly.

Dated: May 10, 2010

/s/ John W. Sedwick
United States District Judge

---

[53] 28 U.S.C. § 2254(d).

[54] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.*, when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[55] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.